NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
ROBERT MANSFIELD,            :
                             :
      Plaintiff,             : CIVIL ACTION NO. 04-3589 (MLC)
                             :
      v.                     :
                             :      MEMORANDUM OPINION
LUCENT TECHNOLOGIES, et al., :
                             :
      Defendants.            :
_____:
```

COOPER, District Judge

    This matter comes before the Court on the motion for summary judgment by plaintiff, Robert Mansfield, and the cross motion for summary judgment by defendants, Lucent Technologies ("Lucent"), Magellan Behavioral Health, Inc. ("Magellan"), and Dianne M. Huesemann ("Huesemann"), pursuant to Federal Rule of Civil Procedure ("Rule") 56(c).  The Court, for the reasons stated herein, will grant defendants' cross motion for summary judgment and deny plaintiff's motion for summary judgment as moot.

BACKGROUND

I.    <u>Facts</u>

    Plaintiff, a former employee of Lucent, has been receiving short or long-term disability benefits for depression since October 1990.  (Catrambone Decl., Ex. A, Compl., at ¶¶ 8-11 ("Compl."); Piorek Decl., Ex. B, Answer, at ¶¶ 8-11 ("Answer").) Plaintiff was diagnosed with depression in 1988 while employed at

Lucent, and took a month-long leave of absence. (Compl., at ¶ 9.) Plaintiff's physician placed him on short-term disability in October 1990, and he received disability benefits for approximately one year. (<u>Id.</u> at ¶ 10.) Lucent terminated plaintiff in October 1991, and he was placed on long-term disability for depression. (<u>Id.</u> at ¶ 11; Answer, at ¶ 11.) Plaintiff began receiving long-term disability benefits at that time. (<u>Id.</u>) Plaintiff is insured under Lucent's Medical Expense Plan for Active Management Employees, and receives Social Security Disability benefits from Medicare and long-term disability benefits from CIGNA, Lucent's private disability provider, and Magellan, Lucent's provider of mental health long-term disability benefits. (Compl., at ¶¶ 8, 13; Answer, at ¶¶ 8, 13.)

Plaintiff receives treatment from both a psychologist and psychiatrist, as is required for receipt of disability income benefits from CIGNA and Medicare. (Compl., at ¶ 14; Answer, at ¶ 14.) To pay for those mental health care benefits, plaintiff would receive reimbursement from Magellan to cover those costs not paid by Medicare. (Compl., at ¶ 20.) Magellan began denying plaintiff's coverage in April 2001 because it mis-classified him as a retired employee and not an active employee. (<u>Id.</u> at ¶¶ 15-17; Piorek Decl., Ex. E, 4-19-04 Huesemann Letter.)

Plaintiff's counsel sent Huesemann, Magellan's appeals manager, a letter on March 31, 2003 requesting plaintiff's benefits.  (Catrambone Decl., Ex. E, 3-31-03 Catrambone Letter ("the March 31, 2003 letter").)  Huesemann, in response to the March 31, 2003 letter, wrote on April 16, 2003 that Magellan had reviewed plaintiff's claims and would continue to classify him as a retiree; thus, he was not entitled to reimbursement.  (Id., Ex. F, 4-16-03 Huesemann Letter ("the April 16, 2003 letter").)  Huesemann, in that letter, advised plaintiff that he could appeal Magellan's determination.  (Id.)

Plaintiff requested a "second-level appeal" following the April 16, 2003 letter.  (Id., Ex. G, 5-13-03 Catrambone Letter.)  Huesemann wrote plaintiff's counsel on July 2, 2003 again denying plaintiff's request and informing him the appeals process with Magellan was complete.  (Id., Ex. I, 7-2-03 Huesemann Letter.)  Plaintiff's counsel wrote Huesemann on February 19, 2004, attaching a copy of a draft complaint, and demanded a $15,000 pre-litigation settlement of plaintiff's claims under the Employee Retirement Income Security Act of 1974 ("ERISA").  (Id., Ex. J, 2-19-04 Catrambone Letter.)

Plaintiff's counsel wrote Huesemann on March 25, 2004 acknowledging a settlement offer and Magellan's mis-classification of plaintiff as a retired employee ("the March 25, 2004 letter").  (Catrambone Decl., Ex. K, 3-25-04 Catrambone

3

Letter.)  The March 25, 2004 letter stated that plaintiff's counsel had estimated his fees to be approximately $15,000 and that this sum would "be an essential term in any settlement agreement in this matter." (Id.)  Huesemann informed plaintiff's counsel in a April 19, 2004 letter that Magellan "does not pay attorney's fees in connection with such matters" ("the April 19, 2004 letter"). (Id., Ex. L, 4-19-04 Huesemann Letter.) Plaintiff's attorney, in response to the April 19, 2004 letter, wrote Huesemann that a settlement could only be reached if Magellan paid plaintiff's attorney's fees. (Id., Ex. M, 4-21-04 Catrambone Letter.)

Magellan sent plaintiff checks totaling $837 for the adjusted reimbursement payments as part of his Lucent plan on May 7, 2004. (Id., Ex. N, Magellan Checks.)  Plaintiff's attorney responded by again demanding attorney's fees and threatening a law suit if Magellan did not reimburse plaintiff. (Id., Ex. O, 5-17-04 Catrambone Letter.)  There is no indication that plaintiff appealed the amount Magellan awarded him after it adjusted his benefits and prior to the commencement of this action.

## II.  **Procedural History**

Plaintiff filed this complaint on July 28, 2004 alleging violations of Section 510 of 29 U.S.C. § 1140 ("Section 510 claim") and Section 502(a) of 29 U.S.C. § 1132(a) ("Section

4

502(a) claim") of ERISA.  Plaintiff's Section 510 claim alleges
that defendants discriminated against him and/or harassed him by
denying him benefits he was due under Lucent's long-term
disability plan.  (Compl., at 8-9.)  Plaintiff alleges under
Section 502(a) that defendants are liable for denying him
benefits due under his long-term disability plan.  (Id. at 9.)
Plaintiff seeks compensatory and punitive damages, as well as
reasonable attorney's fees and costs.  (Id. at 9-10.)  Plaintiff
moved and defendants cross-moved for summary judgement on May 6,
2005.  The Court heard oral argument on June 28, 2005.

## DISCUSSION

### I.   Standard for Summary Judgment

Rule 56(c) provides that summary judgment is proper
"if the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment as
a matter of law."  The party moving for summary judgment
bears the initial burden of showing that there is no genuine
issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986).  Once the summary judgment movant has met
this prima facie burden, the nonmovant "must set forth
specific facts showing that there is a genuine issue for
trial."  Fed.R.Civ.P. 56(e).  A nonmovant must present

actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [nonmovant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

## II.  __Analysis__

A.  <u>Section 510 Claim</u>

Section 510 of ERISA reads in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled.

29 U.S.C. § 1140.  Section 510 actions alleging discrimination "are limited to actions affecting the employer-employee relationship."  <u>Fischer v. Phila. Elec. Co.</u>, 96 F.3d 1533, 1543 (3d Cir. 1996) (quotations and citations omitted).  <u>See also</u> <u>Haberern v. Kaupp Vascular Surgeons Ltd. Defined Pension Plan</u>, 24 F.3d 1491, 1503 (3d Cir. 1994) ("Simply put, [Section] 510 was designed to protect the employment relationship which gives rise to an individual's pension rights.") (citations omitted).  The primary Congressional purpose of Section 510 is "to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits."  <u>Id.</u> at 1502-03 (quotations and citations omitted).

Despite Lucent's classification of plaintiff as an active management employee for purposes of the long-term disability plan, Lucent terminated plaintiff in 1991 — ten years before Magellan mis-classified him.  Application of Section 510 is limited to the employer-employee relationship.  <u>See</u> <u>Fischer</u>, 96

F.3d at 1543; Haberern, 24 F.3d at 1503.  Plaintiff's
classification in the benefit plan is irrelevant; rather, it is
his actual status as a Lucent employee that is relevant here.
Plaintiff cannot state a claim under Section 510 since he was not
a Lucent employee — and was never a Magellan employee — at the
time Magellan mis-classified him as a retired employee.  The
Court, therefore, will grant the part of defendants' cross motion
for summary judgment as to the Section 510 claim.[1]

B.   Section 502(a) Claim

     Section 502(a) of ERISA provides in pertinent part:

          A civil action may be brought — (1) by a participant of
          beneficiary . . . (B) to recover benefits due to him
          under the terms of his plan, to enforce his rights
          under the terms of the plan, or to clarify his rights
          to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).  Before a beneficiary may bring suit,
however, he must exhaust the plan's administrative remedies.
Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir.
2002).  The exhaustion requirement exists because "trustees are
granted broad fiduciary rights and responsibilities under ERISA.

---

     [1]  Additionally, plaintiff would have to show specific
intent on the part of Magellan to interfere with his pension
rights to succeed under Section 510.  See Larrison v. Lucent
Tech., Inc., No. 02-4082, 2004 WL 3178270, at *8-*9 (D.N.J. Aug.
20, 2004) (holding that while there is rarely "smoking gun"
evidence of intentional interference, plaintiff has to overcome
defendant's non-discriminatory explanation with circumstantial
evidence of specific intent).  Plaintiff documents a series of
exchanges between his counsel and Magellan, but has not
demonstrated that Magellan intentionally interfered with his
pension rights.

. . . and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making process." Kilkenny v. Guy C. Long, Inc., 288 F.3d 116, 123 (3d Cir. 2002) (quotations and citations omitted).

A beneficiary is excepted from the exhaustion requirement when resort to administrative remedies is futile. Harrow, 279 F.3d at 249. Mere allegations of futility will not satisfy the futility exception. Canale v. Yegen, 782 F.Supp. 963, 972 (D.N.J. 1992) (quotations and citations omitted). The beneficiary, rather, must make a "clear and positive showing of futility." Id.

> Whether to excuse for exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

Harrow, 297 F.3d at 250 (citation omitted). The Court need not weigh all factors equally. Id. Failure to exhaust administrative remedies may result in summary judgment or dismissal with prejudice. D'Amico v. CBS Corp., 297 F.3d 287, 293 (3d Cir. 2002) (quotations and citations omitted).

Magellan, after approximately one year of communications with plaintiff's counsel regarding the denial of plaintiff's

benefits, corrected its mis-classification of plaintiff under
Lucent's long-term disability plan and awarded him $837 in
adjusted benefits.  Plaintiff did not administratively challenge
this award before filing this action.  Plaintiff claims that it
would have been futile to do so.  (Pl. Reply Br. at 3-7.)

The Court finds that plaintiff has failed to demonstrate
futility.  Plaintiff has not administratively challenged
Magellan's award of adjusted benefits; thus, plaintiff has failed
to satisfy Harrow.  Plaintiff also has failed to demonstrate that
his resort to the judicial process was reasonable.  Plaintiff,
moreover, has not shown that Magellan had a fixed policy of
denying benefits; in fact, Magellan did eventually restore
plaintiff's benefits.  Nor has plaintiff shown that Magellan
failed to comply with its own procedures in issuing him the $837
in adjusted benefits.  Plaintiff, thus, cannot make a clear and
positive showing that it would be futile to resort to further
administrative appeals.  The Court, therefore, will grant the
part of defendants' cross motion for summary judgment as to the
Section 502(a) claim for failure to exhaust administrative
remedies.[2]

---

[2]  The complaint seeks reasonable attorney's fees.  (Compl.,
at 10.)  Plaintiff, in communications to defendants, has demanded
attorney's fees associated with pre-litigation administrative
proceedings.  (See Catrambone Decl., Exs. K, M & O.)  While the
issue of whether plaintiff may recover attorney's fees in this
matter is not presently before us, we note that attorney's fees
incurred in administrative proceedings are not recoverable under
ERISA.  Section 1132(g)(1) of ERISA does not permit parties to

## CONCLUSION

The Court, for the reasons stated supra, will grant
defendants' cross motion for summary judgment, and will enter
judgment in their favor as to plaintiff's Section 510 claim for
failure to state a claim and Section 502(a) claim for failure to
exhaust administrative remedies.  The Court also will deny
plaintiff's motion for summary judgment as moot.  An appropriate
order and judgment will be issued.


    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

---

recover attorney's fees incurred during the administrative phase
of the dispute; rather, it limits awards to fees incurred after
the start of formal judicial proceedings.  Parke v. First
Reliance Stand. Ins. Co., 386 F.3d 999, 1011 (8th Cir. 2004);
Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003);
Peterson v. Cont'l Cas. Co., 282 F.3d 112, 119 (2d Cir. 2002);
Anderson v. Procter & Gamble Co., 220 F.3d 449, 452 (6th Cir.
2000); Cann v. Carpenters' Pension Trust Fund, 989 F.2d 313, 315-
17 (9th Cir. 1993).