**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ROBERT MANSFIELD, : | |
| : | |
| Plaintiff, : | CIVIL ACTION NO. 04-3589 (MLC) |
| : | |
| v. : | |
| : | **MEMORANDUM OPINION** |
| LUCENT TECHNOLOGIES, et al., : | |
| : | |
| Defendants. : | |

**COOPER, District Judge**

Plaintiff, Robert Mansfield, moves for summary judgment, and the defendants, Lucent Technologies ("Lucent"), Magellan Behavioral Health ("Magellan"), and Dianne M. Huesemann cross-move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). The Court will grant defendants' cross motion and deny plaintiff's motion as moot.

## BACKGROUND

**I. Facts**

Plaintiff, a former employee of Lucent, has been receiving short or long-term disability benefits for depression since October 1990. (Catrambone Decl., Ex. A, Compl., at ¶¶ 8-11 ("Compl."); Piorek Decl., Ex. B, Answer, at ¶¶ 8-11 ("Answer").) Plaintiff was diagnosed with depression in 1988 while employed at Lucent, and took a month-long leave of absence. (Compl., at ¶ 9.) Plaintiff's physician placed him on short-term disability in October 1990, and he received disability benefits for about one year. (Id. at ¶ 10.) Lucent terminated plaintiff in October

1991, and he was placed on long-term disability for depression. (Id. at ¶ 11; Answer, at ¶ 11.)  Plaintiff began receiving long-term disability benefits at that time.  (Id.)  Plaintiff is insured under Lucent's Medical Expense Plan for Active Management Employees, and receives Social Security Disability benefits from Medicare and long-term disability benefits from CIGNA, Lucent's private disability provider, and Magellan, Lucent's provider of mental health long-term disability benefits.  (Compl., at ¶¶ 8, 13; Answer, at ¶¶ 8, 13.)

Plaintiff receives treatment from both a psychologist and psychiatrist, as is required for receipt of disability income benefits from CIGNA and Medicare.  (Compl., at ¶ 14; Answer, at ¶ 14.)  To pay for those mental health care benefits, Magellan would reimburse plaintiff to cover those costs not paid by Medicare.  (Compl., at ¶ 20.)  Magellan began denying plaintiff's coverage in April 2001 because it mis-classified him as a retired employee and not an active employee.  (Id. at ¶¶ 15-17; Piorek Decl., Ex. E, 4-19-04 Huesemann Letter.)

Plaintiff's counsel sent Huesemann — Magellan's appeals manager — a letter on March 31, 2003, requesting plaintiff's benefits.  (Catrambone Decl., Ex. E, 3-31-03 Catrambone Letter ("the March 31, 2003 letter").)  Huesemann, in response to the March 31, 2003 letter, wrote on April 16, 2003, that Magellan had reviewed plaintiff's claims and would continue to classify him as

a retiree; thus, he was not entitled to reimbursement. (Id., Ex. F, 4-16-03 Huesemann Letter ("the April 16, 2003 letter").) Huesemann, in that letter, advised plaintiff that he could appeal from the determination. (Id.)

Plaintiff requested a "second-level appeal" following the April 16, 2003 letter. (Id., Ex. G, 5-13-03 Catrambone Letter.) Huesemann wrote plaintiff's counsel on July 2, 2003, again denying plaintiff's request and informing him the appeals process with Magellan was complete. (Id., Ex. I, 7-2-03 Huesemann Letter.) Plaintiff's counsel wrote Huesemann on February 19, 2004, attaching a copy of a draft complaint, and demanded a $15,000 pre-litigation settlement of plaintiff's claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Id., Ex. J, 2-19-04 Catrambone Letter.)

Plaintiff's counsel wrote Huesemann on March 25, 2004, acknowledging a settlement offer and Magellan's mis-classification of plaintiff as a retired employee ("March 25, 2004 letter"). (Catrambone Decl., Ex. K, 3-25-04 Catrambone Letter.) The March 25, 2004 letter stated that plaintiff's counsel had estimated his fees to be approximately $15,000 and that this sum would "be an essential term in any settlement agreement in this matter." (Id.) Huesemann informed plaintiff's counsel in a April 19, 2004 letter that Magellan "does not pay attorney's fees in connection with such matters" ("April 19, 2004 letter"). (Id., Ex. L, 4-19-04

3

Huesemann Letter.)  Plaintiff's counsel, in response to the April 19, 2004 letter, wrote Huesemann that a settlement could only be reached if Magellan paid plaintiff's counsel's fees.  (Id., Ex. M, 4-21-04 Catrambone Letter.)

Magellan sent plaintiff checks totaling $837 for the adjusted reimbursement payments as part of his Lucent plan on May 7, 2004. (Id., Ex. N, Magellan Checks.)  Plaintiff's counsel responded by again demanding attorney's fees and threatening to bring an action if Magellan did not reimburse plaintiff.  (Id., Ex. O, 5-17-04 Catrambone Letter.)  There is no indication that plaintiff appealed the amount Magellan awarded him after it adjusted his benefits and before the commencement of this action.

## II. Procedural History

Plaintiff filed this complaint on July 29, 2004, alleging violations of Section 510 of 29 U.S.C. § 1140 ("Section 510 claim") and Section 502(a) of 29 U.S.C. § 1132(a) ("Section 502(a) claim") of ERISA.  Plaintiff's Section 510 claim alleges that defendants discriminated against him and harassed him by denying benefits due under Lucent's long-term disability plan. (Compl., at 8-9.)  Plaintiff's Section 502(a) claim alleges that defendants are liable for denying him benefits due under his long-term disability plan.  (Id. at 9.)  Plaintiff seeks compensatory and punitive damages, as well as reasonable attorney's fees and costs.  (Id. at 9-10.)  Plaintiff moved and

defendants cross-moved for summary judgment on May 6, 2005.  The Court heard oral argument on July 28, 2005.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A nonmovant must present actual evidence raising a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  The "mere existence of a scintilla of evidence in support of the [nonmovant's] position

will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

**II. Analysis**

    **A.   Section 510 Claim**

Section 510 states:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled.

29 U.S.C. § 1140.  Section 510 is limited to actions affecting the employer-employee relationship. Fischer v. Phila. Elec. Co., 96 F.3d 1533, 1543 (3d Cir. 1996).  See Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan, 24 F.3d

6

1491, 1503 (3d Cir. 1994) (stating Section 510 was designed to protect employment relationship giving rise to individual's pension rights). Section 510 "prevent[s] unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits." Id. at 1502-03 (quotations and citations omitted).

Despite Lucent's classification of plaintiff as an active management employee for purposes of the long-term disability plan, Lucent terminated plaintiff in 1991 — ten years before Magellan mis-classified him. Application of Section 510 is limited to the employer-employee relationship. See Fischer, 96 F.3d at 1543; Haberern, 24 F.3d at 1503. Plaintiff's classification in the benefit plan is irrelevant. Rather, it is his actual status as a Lucent employee that is relevant here. Plaintiff cannot state a claim under Section 510 since he was not a Lucent employee — and was not a Magellan employee — at the time Magellan mis-classified him as a retired employee. The Court, therefore, will grant the part of defendants' cross motion as to the Section 510 claim.[1]

---

[1] Plaintiff also would have to show Magellan specifically intended to interfere with his pension rights to succeed under Section 510. See Larrison v. Lucent Techs., No. 02-4082, 2004 WL 3178270, at *8-*9 (D.N.J. Aug. 20, 2004) (stating that while there is rarely "smoking gun" evidence of intentional interference, plaintiff has to overcome defendant's non-discriminatory explanation with circumstantial evidence of specific intent). Plaintiff documents a series of exchanges between his counsel and Magellan, but has not shown that Magellan intentionally interfered with his pension rights.

**B.     Section 502(a) Claim**

Section 502(a) states:

> A civil action may be brought — (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).  A beneficiary must exhaust the plan's administrative remedies before bringing an action.  <u>Harrow v. Prudential Ins. Co.</u>, 279 F.3d 244, 249 (3d Cir. 2002).  The exhaustion requirement exists because "trustees are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes."  <u>Kilkenny v. Guy C. Long, Inc.</u>, 288 F.3d 116, 123 (3d Cir. 2002) (quotations and citations omitted).

A beneficiary is excepted from the exhaustion requirement when resorting to administrative remedies would be futile.  <u>Harrow</u>, 279 F.3d at 249.  Mere allegations of futility will not satisfy the futility exception.  <u>Canale v. Yegen</u>, 782 F.Supp. 963, 972 (D.N.J. 1992).  The beneficiary, rather, must make a "clear and positive showing of futility."  <u>Id.</u>

> Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the

>     insurance company to comply with its own internal
>     administrative procedures; and (5) testimony of plan
>     administrators that any administrative appeal was
>     futile.

Harrow, 279 F.3d at 250.  The Court need not weigh all factors equally.  Id.  Failure to exhaust administrative remedies may result in summary judgment or dismissal with prejudice.  D'Amico v. CBS Corp., 297 F.3d 287, 293 (3d Cir. 2002).

Magellan, after about one year of communications with plaintiff's counsel regarding the denial of plaintiff's benefits, corrected its mis-classification of plaintiff under Lucent's long-term disability plan and awarded him $837 in adjusted benefits.  Plaintiff concedes he did not administratively challenge this award before bringing this action, but argues that it would have been futile to do so.  (Pl. Opp. Br., at 3-7.)

Plaintiff has failed to demonstrate futility.  He has not administratively challenged Magellan's award of adjusted benefits; thus, plaintiff has failed to satisfy Harrow.  Plaintiff also has failed to demonstrate that his resort to the judicial process was reasonable.  Plaintiff, moreover, has not shown that Magellan had a fixed policy of denying benefits; in fact, Magellan did eventually restore his benefits.  Nor has plaintiff shown that Magellan failed to comply with its own procedures in issuing him the $837 in adjusted benefits.  Plaintiff, thus, has not made a clear and positive showing that it would be futile to resort to

further administrative appeals.  The Court, therefore, will grant the part of defendants' cross motion as to the Section 502(a) claim for failure to exhaust administrative remedies.[2]

## CONCLUSION

The Court will grant defendants' cross motion for summary judgment, and will enter judgment in their favor as to plaintiff's Section 510 claim for failure to state a claim and Section 502(a) claim for failure to exhaust administrative remedies.  The Court also will deny plaintiff's motion for summary judgment as moot.  The Court will issue an appropriate order and judgment.

          s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

---

[2] The complaint seeks reasonable attorney's fees.  (Compl., at 10.)  Plaintiff, in communications to defendants, has demanded attorney's fees associated with pre-litigation administrative proceedings.  (See Catrambone Decl., Exs. K, M & O.)  Whether plaintiff may recover attorney's fees here is not at issue.  (Pl. Opp. Br., at 7 n.1.)  But we note that attorney's fees incurred in administrative proceedings are not recoverable under ERISA.  Section 1132(g)(1) of ERISA does not permit parties to recover attorney's fees incurred during the administrative phase of the dispute; rather, it limits awards to fees incurred after the start of formal judicial proceedings.  Parke v. First Reliance Stand. Life Ins. Co., 368 F.3d 999, 1011 (8th Cir. 2004); Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003); Peterson v. Cont'l Cas. Co., 282 F.3d 112, 119 (2d Cir. 2002); Anderson v. Procter & Gamble Co., 220 F.3d 449, 452 (6th Cir. 2000); Cann v. Carpenters' Pension Trust Fund, 989 F.2d 313, 315-17 (9th Cir. 1993).